**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**DEREIA S. MAGEE**                                                                **PLAINTIFF**

**VERSUS**                                              **CIVIL ACTION NO. 1:09cv620-HSO-JMR**

**MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY**                                    **DEFENDANT**

## REPORT AND RECOMMENDATION

This cause comes before this Court on Plaintiff's Motion [11-1] to Remand or Reverse. Plaintiff's Motion is accompanied by a Memorandum [12-1 ] in Support.  Defendant has filed a Response [15-1] in Opposition and a Memorandum [16-1] in Support of his Response, to which Plaintiff filed a Reply [17-1].  Having  considered the Motion [11-1], Defendant's Response, the Memorandums in Support [12-1; 16-1], the Plaintiff's Reply [17-1], the record of the proceedings below, along with the record as a whole and the relevant law, this Court finds that Plaintiff's Motion [11-1] to Remand or Reverse should be denied.

## ADMINISTRATIVE PROCEEDINGS

On December 28, 2001, Plaintiff, through his mother, protectively applied for Supplemental Security Income benefits ("SSI"), for a period of disability and childhood disability benefits. (Transcript of the Administrative Record, hereinafter "Tr.," 94-97.)  In his application, Plaintiff claims that he became disabled on November 8, 1999 due to attention-deficit hyperactivity disorder ("ADHD") and amniotic bands he had been born with that required surgery. (Tr. 108).  Plaintiff, however, does not pursue any claim of alleged physical impairment due to the amniotic bands in the instant appeal. (*See* Pl.'s Mem. [12-1] Br.)  Plaintiff's claim was denied initially and on reconsideration. (Tr. 83-84.)  Thereafter, Plaintiff requested a hearing before an Administrative Law

Judge ("ALJ"). (Tr. 91.)  On April 1, 2003,   Plaintiff appeared with counsel and, along with his

mother, testified at a hearing before the ALJ. (Tr. 48-63.)  The ALJ determined that Plaintiff was not

disabled within the meaning of the Social Security Act. (Tr. 37-47.)  On February 1, 2007, t  he

Appeals Council remanded the case to the ALJ instructing her to perform an adequate evaluation of

Dr. Kevin Passer's opinion and the state agency findings. (Tr. 260-262).  On October 10, 2007, the

ALJ conducted another hearing. (Tr. 64-82.)   On October 19, 2007, the ALJ issued a new decision

and again determined that Plaintiff was not disabled. (Tr. 20-31.)  On May 1, 2009, the Appeals

Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 11-13.)  On June 10, 2009,

after Plaintiff submitted additional evidence, the Appeals Council again denied Plaintiff's request

for review of the ALJ's decision, thus making the determination the "final decision" of the

Commissioner. (Tr. 7-9.)  On August 12, 2009, Plaintiff filed the instant action for judicial review

pursuant to 42 U.S.C. § 405(g) of the Social Security Act. (*See* Compl. [1-1].)

## FACTS

In December 1999, during a hospital visit unrelated to the present claim, Dr. Nancy Rogers,

as informed by Plaintiff's mother, observed that Plaintiff was taking medication for ADHD. (Tr.

202.)  It was noted that the medication had caused "marked improvement in [Plaintiff's] school

grades." *Id.*  In September 2001, Dr. Denney, Plaintiff's primary care physician, referred Plaintiff

to psychiatrist Dr. Kevin Passer after complaints of problems with following directions in school and

fighting with his brother at home. (Tr. 222.)  Plaintiff was eleven years old at the time. (Tr. 221.)

Dr. Passer started Plaintiff on Concerta. *Id.*  One month later, Dr. Passer noted that Plaintiff's

medication was helping and that he was better overall. *Id.*  Dr. Passer increased Plaintiff's dosage

of Concerta. *Id.*  At the following visit in December 2001, Dr. Passer noted that Plaintiff's

medication was helping and that he was "doing 'great,' making 100's." (Tr. 220.)  Also, Dr. Passer

noted that Plaintiff was not having problems at school, at home, or with friends. *Id.*  Further, Dr. Passer observed Plaintiff to have a calm behavior, a euthymic mood, a cheerful affect, average intelligence, partial insight, an intact memory, and fair judgment. *Id.*

However, that same month, in Plaintiff's application for benefits, Plaintiff's mother completed a questionnaire regarding Plaintiff's functioning. (Tr. 98-117.)  She claimed he was unable to stay focused without medication, had problems remembering to relay telephone messages and events, could not tell time or count money, had difficulty kicking and running, acted timid around unfamiliar people, had to be reminded to perform personal hygiene tasks, and hardly ever completed a task without being reminded to do so. (Tr. 101-105.)

In February 2002, Sharon Anderson, Plaintiff's fifth grade teacher, completed a questionnaire in which she concluded that Plaintiff could understand and follow directions, accept authority, follow rules, get along with adults, get along with other children, and get along with teachers some of the time. (Tr. 166-67.)  She indicated, however, that Plaintiff was "very eratic [sic]" and confrontational. (Tr. 168.)  In that same month, Dr. Passer observed that Plaintiff was "OK overall" and noted that he had no problems at school, at home, or with friends. (Tr. 219.)

In March 2002, Anita Crump, one of Plaintiff's teachers, completed a teacher questionnaire for the Mississippi Disability Determination Services in which she indicated that Plaintiff could be placed in a regular classroom. (Tr. 158, 162.)  She further observed that Plaintiff's grammar and editing skills were poor, but that rarely was his speech difficult to understand, rarely did he have difficulty with spoken directions or instructions, expressing himself verbally or thinking of the appropriate word. (Tr. 159.)  She also observed that Plaintiff was able to participate in physical education or play with classmates on the playground and that he had no physical problems or illnesses that affected his ability to achieve in school. (Tr. 160.)  Additionally, she observed that

Plaintiff had adequate social and interpersonal skills, his level of social functioning was age-appropriate, and his personal self-care skills were also age-appropriate. (Tr. 161). She noted, however, that Plaintiff needed to work longer to complete his tasks because he got distracted. (Tr. 162.) She further noted that Plaintiff had improved in his behavior and academics. (Tr. 163.)

In that same month, Kevin McCarthy, Ph.D., completed a psychological evaluation of Plaintiff. (Tr. 223-228.) He observed that Plaintiff had symptomatology consistent with ADHD. (Tr. 223-24.) Dr. McCarthy observed that Plaintiff took care of his personal hygiene and attended school, but that Plaintiff and his mother reported he was distracted and had difficult making decisions. (Tr. 224.) After administering the Wechsler Intelligence Scale for Children-Third Edition, Dr. McCarthy noted that Plaintiff's verbal, performance, and full scale IQ's were in the borderline range of functioning. (Tr. 226.) Dr. McCarthy concluded that Plaintiff "may be functioning in the upper mildly mentally retarded range of intellectual functioning." (Tr. 227.) He diagnosed ADHD, borderline intellectual functioning, and assigned a Global Assessment of Functioning (GAF) of 40.[1] (Tr. 227.)

The following month, April 2002, state agency psychologist Jesse Dees, Ph.D. reviewed the record and concluded that Plaintiff had no severe impairments. (Tr. 229-30.) Dr. Dees found that Plaintiff had a marked limitation in attending and completing tasks, but a less than marked limitation in acquiring and using information and no limitation in the other functional domains. (Tr. 231, 234.)

In October 2002, Dr. Passer observed that Plaintiff had increased problems in school but not

---

[1]GAF of 31-40 indicates a major impairment in several areas. *Diagnostic and Statistical Manual of Mental Disorders*, p. 34 (4th Ed. 2000). However, Plaintiff concedes that a GAF score does not *per se* indicate disability under the Social Security Act. (Pl.'s Reply [17-1] 1.) The GAF is a test used by mental health practitioners with respect to planning treatment and tracking the clinical progress of an individual in global terms, the ALJ is not bound to consider its results at the exclusion of other medically reliable evidence. The Court notes that on March 11, 1997, licensed counselor Tardy Byrd, MS, LPC assigned a GAF of 70 to Plaintiff. (Tr. 195.)

at home or with friends. (Tr. 249.)  Dr. Passer noted that he had not seen Plaintiff since February and that he was non-compliant with his assessment and treatment plan.  *Id.*  He increased Plaintiff's Concerta prescription.  *Id.*

In January 2003, Dr. Passer observed that Plaintiff's medication was helping and that he was "doing well overall" with "better grades." (Tr. 246, 247.)  He also noted that Plaintiff was not having problems at school, at home, or with his friends and that Plaintiff had good concentration. (Tr. 247.)  The following month, on February 3, 2003, Dr. Passer completed a questionnaire in which he opined that Plaintiff was extremely limited in paying attention and maintaining concentration, persistence, or pace. (Tr. 241.)  He also indicated that Plaintiff was markedly limited by his impulsiveness, hyperactivity, age-appropriate cognitive/communicative functioning, social functioning, personal care skills, and motor functioning. *Id.*  He found that the level to which Plaintiff's impairment interfered with his ability to function at an age-appropriate level was extreme. *Id.*  Two days later, however, on February 5, 2003, Dr. Passer observed that Plaintiff was not having problems in school, at home, or with his friends, and that he had good concentration. (Tr. 245.)  He also noted that Plaintiff was "ok overall" and that his grades were up. *Id.*

On March 6, 2003, Nathan Lubin, Ph.D. conducted a psychological evaluation and administered the WISC-III psychological test and the Bender-Gestalt test to Plaintiff.  Dr. Lubin found that Plaintiff was neither neurologically impaired nor mentally retarded, and that although he was functioning between the borderline and dull normal ranges, he had the intellectual potential to function within the average range. (Tr. 242-43.)

Plaintiff, who was in seventh grade at the time, testified at the administrative hearing in front of the ALJ on April 1, 2003.  Plaintiff stated that he was in regular classes. (Tr. 49-50.)  He further testified that he enjoyed reading and playing basketball. (Tr. 51-52.)  Plaintiff's mother also testified

at the hearing, and she claimed that Plaintiff tripped a lot as he had difficulty with his balance. (Tr. 56-57.)  She further claimed that Plaintiff could never complete a task such as cleaning his room. (Tr. 57.)  Also, she claimed that he could not remember anything and that he was physically aggressive. (Tr. 58.)  Plaintiff's mother further testified that academically Plaintiff was "up and down," and that he rushed through his homework. (Tr. 58, 61.)  Additionally, she testified that although Plaintiff has not had any trouble with authority, he has difficulty with adults. (Tr. 62.)

In May 2003, Plaintiff reported to Dr. Passer increased problems in school. (Tr. [8-3] 8.)  Dr. Passer noted that Plaintiff was being "more disruptive" in school and that he was also having problems at home but not with friends. *Id.*  Dr. Passer found that Plaintiff was not taking his medication. *Id.*  On his next follow-up visit with Dr. Passer, in June 2003, Plaintiff was noted as doing well in school, and Dr. Passer observed that Plaintiff was "doing well" and was not having problems at home, in school, or with friends. (Tr. [8-3] 7.)  In August 2003, Dr. Passer noted that the Concerta medication was helping and Plaintiff was not having any problems. (Tr. [8-3] 4-5.)  In October 2003, Dr. Passer again observed that Plaintiff's medication was helping and that Plaintiff was "ok overall." (Tr. [8-3] 2-3.)

Throughout 2004, Dr. Passer adjusted Plaintiff's medications, eventually settling on a combination of Adderall and Wellbutrin. (Tr. [8-2] 273-289, [8-3] 1.)  During Plaintiff's visits with Dr. Passer throughout 2004, Plaintiff's medication was largely noted to be helping and Plaintiff was noted to be doing well, doing better, and having good concentration. *Id.*  Throughout this period, Dr. Passer observed that Plaintiff was not having problems in school, at home, or with friends, with the exception of failing science class and not being motivated at school in August. *Id.*  On Plaintiff's last visit with Dr. Passer, in November 2004, Plaintiff was noted as doing better with no problems at home, in school, or with friends. (Tr. [8-2] 274.)  Dr. Passer also observed Plaintiff as having good

concentration. *Id.*

At the second hearing before the ALJ on October 10, 2007, Plaintiff was seventeen (17) years old and in the eleventh grade. (Tr. [8-2] 70-71.)  Plaintiff testified that he found it hard to focus in class and to understand what the teacher was saying. (Tr. [8-2] 71.)  Plaintiff failed the tenth grade and had to repeat that year of school; he was not in any special education classes. (Tr. [8-2] 71.)  Plaintiff testified to a disagreement with one of his teachers involving Plaintiff's cellular telephone which led to a three day suspension. (Tr. 72.)  Plaintiff testified that he is planning on running for the high school track team again and that he plays basketball with his friends. (Tr. 73.)  Plaintiff further stated that after high school he planned on going to college at either Kansas or Jackson State and majoring in business. (Tr. 75-76.)  Plaintiff stated that he really does not have problems with kids his own age but that he has some problems with teachers. (Tr. 76.)  He also claimed that his medication makes him sleepy. *Id.*  Plaintiff's mother testified that it was hard for Plaintiff to "stay on task" at school, and that most of the time he does not complete his homework. (Tr. 78-79.)  She also testified that Plaintiff can bathe himself and take care of himself in the mornings but that she has to redirect him. (Tr. 79.)  She further testified that Plaintiff "pretty much gets along with everybody." (Tr. 80.)  Plaintiff's attorney noted that Dr. Passer retired in 2005. (Tr. 67.)  Plaintiff's mother testified that Plaintiff stopped seeking psychiatric treatment when Dr. Passer retired because it was hard to keep appointments that were with a psychiatrist located in a different city. (Tr. 80-81.)  Instead, Plaintiff's pediatrician had taken over filling his prescriptions. (Tr. 81.)

## **STANDARD OF REVIEW**

On review, the ALJ's determination that a claimant is not disabled will be upheld if the findings of fact upon which it is based are supported by substantial evidence on the record as a whole, and it was reached through the application of proper legal standards.  42 U.S.C. § 405(g);

*Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  The United States Supreme Court defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," being "more than a scintilla, but less than a preponderance." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

All evidentiary conflicts are resolved by the Commissioner, and if substantial evidence is found to support the decision, then the decision is conclusive and must be affirmed, even if there is evidence on the other side.  *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).  On appeal, the court may not re-weigh the evidence, try the case *de novo*, nor substitute its own judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds the evidence preponderates against the decision.  *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## ANALYSIS

The evaluation process for determining childhood disability is outlined in 20 C.F.R. § 416.924, a three-step sequential analysis is employed.  First, it must be determined whether the child is engaged in substantial gainful activity.  If so, a finding of not disabled must be made; if not, it must next be determined if the child's impairment or combination of impairments is severe.  A child will not be found to have a severe impairment if it constitutes only a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." 20 C.F.R. § 416.924(c).  If the child has a severe impairment it must finally be determined whether the impairment meets, equals or is functionally equal in severity to a listed impairment. 20 C.F.R. §§ 416.924(d), 416.926, 416.926a.  Whether the impairment equals a listed impairment is determined by considering the medical evidence in connection with the requirements of the applicable listing. 20 C.F.R. § 416.926.  If the impairment does not actually equal a listed impairment, it must be determined whether the impairment or combination of impairments "functionally" equals the

requirements of any listed impairment. 20 C.F.R. § 416.926a. For this functional equivalence inquiry, it must be considered whether the child's impairment(s) results in a marked limitation in two, or an extreme limitation in one, of the following "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b). A "marked" limitation is one that interferes seriously with a child's ability to "independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(d)(2). An "extreme" limitation is one that "interferes very seriously with [one's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(d)(3).

At the first step of the sequential evaluation, the ALJ found that Plaintiff had not engaged in any substantial gainful employment at any time relevant to the decision. (Tr. 26.) Next, the ALJ determined that Plaintiff's sole severe impairment was ADHD. (Tr. 26.) However, at step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled one of the listings. (Tr. 27.) The ALJ found that Plaintiff had a less than marked limitation in acquiring and using information; at most, a marked limitation in attending and completing tasks; no limitation in interacting and relating to others; no appreciable limitations in moving about and manipulating objects; and no appreciable limitation in health and physical well-being. (Tr. 27-30.) For these reasons, the ALJ concluded that Plaintiff was not disabled and not entitled to an award of SSI.

Plaintiff argues that the ALJ did not properly weigh the medical evidence in determining his alleged disability. Plaintiff asserts that the ALJ erred in assessing Plaintiff's impairment by not adequately weighing the opinion of Plaintiff's treating psychiatrist, Dr. Passer, and the findings of a consultative psychologist, Dr. McCarthy. (Pl.'s Mem. [12-1] 3-8.) Plaintiff also argues that the ALJ

failed to comply with 20 C.F.R. § 404.1527(d) and the instructions of the Appeals Council in rejecting the opinion of his treating psychiatrist, Dr. Passer. *Id.* at 8-13.

The Court notes that an ALJ is required to review the medical evidence and consider the various medical opinions contained in the record.  Medical opinions are statements from an acceptable medical source about the nature and severity of an individual's impairments.  The Court notes that a statement that an individual is disabled or cannot work is not a controlling medical opinion, and an ALJ is not bound to accept such a statement, regardless of the source.  In fact, such matters are reserved for the Commissioner to decide. *See* 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1).

The Commissioner's regulations and rulings provide that the opinion of a treating physician is to be given controlling weight when it is an actual opinion from a treating source that is well supported by clinical findings and is consistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527, *Social Security Ruling* (SSR) 96-2p.  The Fifth Circuit has held that the opinions of a treating physician should be afforded substantial weight, unless there exists good cause not to do so.  Recognized good cause exceptions include opinions not supported by laboratory or clinical findings, brief conclusory statements, or opinions not otherwise supported by the evidence.  *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).  However, even if given full weight, a physician's opinion is not controlling on the issue whether an individual is able to work. *Martinez v. Chater*, 64 F.3d 172, 176-176 (5th  Cir. 1995).

Plaintiff complains that the ALJ did not adopt the opinion of Plaintiff's principal treating psychiatrist, Dr. Passer. (Pl.'s Mem. [13-1] 10.)  Ordinarily, a treating physician's opinion on the issues of the nature and severity of impairment is entitled to controlling weight, provided that the opinion is well supported by medical evidence and not inconsistent with other substantial evidence.  20 C.F.R. §§ 416.927(d)(2).  Accordingly, an ALJ must take the following factors into consideration

when determining the weight to be given to the opinions of a treating physician: (1) length of treatment, (2) frequency of examination, (3) nature and extent of relationship, (4) support provided by other evidence, (5) consistency of opinion with record, and (6) specialization. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001); *see also* 20 C.F.R. § 416.927(d)(2)(i)-(ii), (3)-(6).

However, "[w]hen good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony. The good cause exceptions... include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Greenspan*, 38 F.3d at 237; *see also* 20 C.F.R. § 416.927(d)(2). The ALJ is entitled to determine the credibility of all witnesses, including medical experts, and weigh their opinions accordingly. *Greenspan*, 38 F.3d at 237; *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). The opinion of a treating physician "may be assigned little or no weight when good cause is shown. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000) (citation omitted); *see also Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (in determining whether to give a treating physician's opinion controlling weight, the ALJ must look to whether the opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with... other substantial evidence'" (quoting 20 C.F.R. § 404.1527(d)(2))). "[A]lthough the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (quotation omitted).

The ALJ found that Plaintiff's ADHD was a severe impairment, however, the ALJ further found that the medical evidence of record did not support Plaintiff's alleged level of incapacity. The ALJ declined to assign great weight to Dr. Passer's opinion by noting that "[a]lthough Dr. Passer was at the time a treating physician, the undersigned has assigned only some, but not great weight, to his opinion, in that the degrees of limitation assigned are not consistent with Dr. Passer's own treatment notes." (Tr. 30.) The ALJ noted that "[Dr. Passer's] notes... reflect significant improvement with medication therapy." *Id.* Further, the ALJ assigned "little weight" to the opinion of Dr. McCarthy because it was "not supported by or consistent with the whole of the evidence." (Tr. 31.) Plaintiff asserts that the findings of his treating psychiatrist, Dr. Passer, and examining psychologist, Dr. McCarthy, should have been given controlling weight and adopted as the opinion of the ALJ since said opinions were unrebuked by any substantial evidence. (Pl.'s Mem. [12-1] 4-8.) This Court disagrees. Plaintiff fails to acknowledge the opinion of examining psychologist, Dr. Nathan Lubin, nor does Plaintiff address the observations of Dr. McCarthy or Dr. Passer's treatment notes, which fail to support their conclusions about Plaintiff's limitations.

The ALJ found that Plaintiff was impaired by ADHD, however, this condition does not translate to the limitations depicted by Dr. Passer. The mere presence of some impairment is not disabling *per se*. In the absence of objective medical evidence indicating that Plaintiff suffered disabling ADHD, Plaintiff fails to meet his burden of proving disability. Plaintiff claims that the ALJ rejected Dr. Passer's and Dr. McCarthy's opinions based solely on the opinion of a state agency physician that did not examine Plaintiff, and thus, the ALJ's decision was not supported by substantial evidence. (*See* Pl.'s Mem. [12-1] Br.) However, Plaintiff's allegation is simply incorrect. The ALJ specifically mentioned and referenced the psychological evaluation completed by Dr. Lubin, who opined that Plaintiff "is neither neurologically impaired nor is he mentally retarded." (Tr. 27, 243.)

Furthermore, the ALJ repeatedly referenced the extensive notes of Dr. Passer, the impressions of Dr. McCarthy, the opinions of the state agency physicians, the complaints of both the mother and Plaintiff, and the reports of Plaintiff's teachers. (Tr. 26-31.)

Dr. Lubin conducted a psychological evaluation of Plaintiff on March 6, 2003. (Tr. 242.)  He noted that Plaintiff's speech was clear and understandable. *Id.*  After testing Plaintiff, Dr. Lubin noted that Plaintiff's full scale I.Q. score was 77, which indicated that Plaintiff was functioning between the borderline and the dull normal ranges. *Id.*  However, Dr. Lubin opined that based on Plaintiff's subtest scatter, Plaintiff's intellectual potential of functioning was within the average range. *Id.* Throughout the evaluation, Dr. Lubin observed that Plaintiff was understandable and his speech clear, he observed suggestions of impulsivity, he found Plaintiff's motor coordination to be adequate, and he found no indications of any type of neurological impairment or brain damage. *Id.* at 242-43.  Dr. Lubin noted that there may be personality factors present and he suggested personality testing be done to determine what factors may be interfering with Plaintiff's general level of adjustment.  *Id.*  Dr. Lubin's report does not set forth a single functional limitation.

The ALJ also relied on Dr. McCarthy's observations.  Dr. McCarthy conducted a psychological evaluation of Plaintiff on March 25, 2002, and observed that Plaintiff presented symptoms consistent with ADHD. (Tr. 223.)  He noted that Plaintiff informed him that he takes care of his hygiene and dresses himself. (Tr. 224.)  Dr. McCarthy also noted that Plaintiff sleeps between eight and nine hours a night, has a good appetite, and has no problem with guilt, anxiety, hopelessness, crying, sadness or an inability to function. *Id.*  Dr. McCarthy found Plaintiff's thought content and stream of thought to be coherent and appropriate for the interview setting. (Tr. 225.)  Dr. McCarthy found Plaintiff's full scale I.Q. score to be 73 and found Plaintiff to be in the borderline range of functioning, but thought Plaintiff is more prone to functioning in the upper mildly mentally

retarded range. (Tr. 226.)  Dr. McCarthy concluded that Plaintiff would not be able to drive or shop without assistance or manage any finances to which he might be entitled. (Tr. 227.)  The ALJ noted that he considered Dr. McCarthy's impression that Plaintiff, despite intelligence quotients in the borderline range, adaptively functioned in the upper mildly mentally retarded range. (Tr. 27.)  Also, the ALJ noted that "Dr. McCarthy stated the claimant presented with symptoms consistent with [ADHD], but he specifically commented the claimant was task-oriented and his level of cooperation was 'good,'" and that Plaintiff was "capable of using good social judgment, and that his affect was bright."  (Tr. 28, 29.)

Furthermore, the ALJ extensively analyzed Dr. Passer's opinions and notes. (Tr. 26-31.)  On February 3, 2003, Dr. Passer completed a questionnaire in which he opined that Plaintiff had extreme inattention, and marked impulsiveness and hyperactivity. (Tr. 241.)  He further claimed that Plaintiff's impairment resulted in marked limitation in cognitive/communicative functioning, social functioning, development of skills to care for personal needs, and age-appropriate motor functioning. *Id.*  Also, Dr. Passer opined that Plaintiff had extreme limitation in maintaining concentration, persistence or pace, and functioning at an age-appropriate level. *Id.*  However, just two days later, during a follow-up visit with Plaintiff, Dr. Passer noted that Plaintiff was "ok overall, " that his grades were up, and that he was not having any problems at home, at school, or with friends. (Tr. 245.)  Also, on Plaintiff's last visit with Dr. Passer immediately prior to him filling out the form, Dr. Passer noted that Plaintiff was doing well overall, that he was getting better grades, that he had good concentration, and that he was not having any problems at school, at home, or with friends. (Tr. 247.)

The ALJ found that Plaintiff had at most a marked limitation in attending and completing tasks. (Tr. 29.)  The ALJ noted that upon Plaintiff's initial visit with Dr. Passer in September 2001, Plaintiff's mother reported problems paying attention and following directions, fighting with his

younger brother, and a school suspension for fighting. (Tr. 28.)  Dr. Passer diagnosed ADHD and

disruptive behavior, and he prescribed Concerta.  After an increase in the dosage in October 2001,

the mother, in December 2001, stated that Plaintiff was doing "great" and making "100s" in school.

The ALJ also noted that after reporting Plaintiff was doing "okay" in February 2002, he did not return

to Dr. Passer until October 2002.  At that time, the mother stated that Plaintiff had increased problems

in school including impulsivity and multiple detentions.  Dr. Passer found that Plaintiff was non-

compliant with his medications and he instructed Plaintiff to start taking his medications again.

Plaintiff's mother reported increased problems in school in May 2003, however, she admitted that

Plaintiff was not taking his medications.   Throughout his treatments, Dr. Passer consistently noted

Plaintiff's concentration to be "good" and his intelligence to be "average," with the exception of May

14, 2003 when Plaintiff was not taking his medications. (Tr. 219-21, 245, 247, 249, 274, 276, 278,

280, 282, 284, 286, 288; Tr. [8-3] 1, 3, 5, 7, 8.)  The ALJ found that "[g]iven Dr Passer's notations

on non-compliance, and the claimant's report to an emergency room physician in April, 2007 that he

was taking no medications, the undersigned is not at all convinced the claimant has taken medications

for [ADHD] on a consistent basis." (Tr. 29.) *See* 20 C.F.R. §§ 404.1530, 416.930 (establishing that

failure to follow treatment advice precludes finding of disability).  The ALJ also noted that although

Dr. McCarthy stated Plaintiff presented symptoms consistent with ADHD, he commented that

Plaintiff was task-oriented and had a good level of cooperation. (Tr. 28.)  The ALJ further noted that

Plaintiff's mother testified that although she constantly has to remind him, Plaintiff can do what is

necessary. *Id.*  The ALJ found that the evidence supported a finding of, at most, a marked limitation

in attending and completing tasks.

Dr. Passer found Plaintiff to have a marked limitation in the social functioning domain,

however, the ALJ held that the "whole of the evidence does not support a finding of any limitation

in interacting and relating to others." (Tr. 29, 241.)  The ALJ noted that Plaintiff testified that he did not have any problems with kids his age, but has some problems with teachers.  Plaintiff's mother also testified that Plaintiff had been suspended for fighting and for a phone incident with a teacher. However, the ALJ also noted that Plaintiff's mother testified that Plaintiff is quiet and mostly keeps to himself and gets along with people.  Further, the ALJ recognized Dr. McCarthy's observation that Plaintiff was capable of using good social judgment and that his affect was bright.  The ALJ also relied on a teacher's report that stated Plaintiff accepts authority, follows rules, and gets along well with children, teachers and other adults "some of the time." (Tr. 29, 166.)  Another questionnaire completed by a different teacher suggested that Plaintiff rarely was unwilling or unable to follow rules and was rarely aggressive, violent or disruptive, even though he may as often as weekly demonstrate oppositional or defiant behavior. (Tr. 29, 160-61.)  The teacher concluded that Plaintiff's social functioning was age-appropriate. (Tr. 161.) Furthermore, Dr. Passer's treatment notes do not suggest any problems pertaining to interacting and relating with others according to the regulations set out in 20 C.F.R. § 416.926a.  Also, as stated earlier, at the same time Dr. Passer found Plaintiff to have a marked limitation in social interactions, he observed that Plaintiff had no problems at home, at school, or with his friends. (Tr. 241, 245.)

In finding that Plaintiff had no appreciable limitation in the domain of moving about and manipulating objects, the ALJ noted that although Plaintiff's mother testified that he sometimes trips because he loses balance, Plaintiff testified that he plays basketball with his friends and that he plans on once again running track for his high school team.  Also, the ALJ relied on a teacher questionnaire which provided that Plaintiff was able to participate in physical education, play with classmates, and only rarely had difficulties with fine or gross motor skills. (Tr. 29, 160.)  The ALJ recognized that Plaintiff sustained a muscle strain while playing kickball in October 2001, but noted that x-rays were

negative.  The ALJ further found that a muscle strain was not the type of impairment expected to produce continuing limitation, and that no evidence in the record suggests that Plaintiff continues to have problems pertaining to this injury.  Furthermore, Dr. Passer's treatment notes consistently reported that Plaintiff's motor activity was "non-remarkable," indicating no functional limitations in this area, with the exception of two visits where Dr. Passer indicated that Plaintiff was moving slowly because he was not taking his medications and because his medications were being adjusted. (Tr. 245-88; Tr. [8-3] 1-8.)  Thus, as the ALJ held, Dr. Passer's notes do not support his allegation that Plaintiff was markedly limited in appropriate motor functioning. (Tr. 241.)

Regarding the domain of caring for yourself, the ALJ found that Plaintiff did not demonstrate any limitation. (Tr. 30.)  Again, Dr. Passer's treatment notes do not support his contention that Plaintiff was markedly limited in this domain. (Tr. 241.)  Dr. Passer's notes consistently reflect that Plaintiff's appearance was average and casual, not unkempt or bizarre, and that he was getting good sleep.  The ALJ also noted that Plaintiff testified that after he arrives home from school, he does his chores.  The ALJ further relied on one of Plaintiff's teacher's assessment that Plaintiff's personal functioning was age-appropriate and that he rarely had difficulty with self-help skills. (Tr. 30, 161.)

After discussing testimony from Plaintiff and his mother and the observations of Dr. McCarthy and Dr. Lubin, the ALJ found that Plaintiff had a less than marked limitation in the domain of acquiring and using information. (Tr. 27-28.)  Plaintiff testified that he failed the tenth grade once but that he was currently in the eleventh grade and doing well.  Plaintiff also testified that after high school he plans to attend college at either Kansas or Jackson State and major in business.  On a teacher questionnaire completed March 6, 2002, one of Plaintiff's teachers claimed that he had daily difficulty writing on grade level, but only weekly difficulty learning new material.  The teacher also noted that Plaintiff rarely required special assistance, and he rarely had difficulty recalling previously

learned material.  The record reveals that Plaintiff was in regular education classes.  The ALJ also considered Dr. McCarthy's impression that Plaintiff, despite an I.Q. in the borderline range, adaptively functioned in the upper mildly mentally retarded range.  Further, the ALJ relied on Dr. Lubin's observation that Plaintiff's actual intellectual potential was in the average range.

As to the last functional domain, health and physical well-being, the ALJ concluded that Plaintiff had no appreciable limitation. (Tr. 30.)  Although Plaintiff complained of occasional headaches, a CT scan of his head on February 2, 2006 was normal. (Tr. [8-3] 17.)  Plaintiff and his mother testified that his medications make him tired and sleepy; Plaintiff's pediatrician informed them that it could be a side effect of the medication.  The ALJ, however, correctly noted that the record does not reflect reports of significant continuing side effects to Plaintiff's physicians.  The ALJ also noted that Plaintiff's mother informed Dr. McCarthy that Plaintiff slept between eight and nine hours per night and had a good appetite.  She also stated that Plaintiff had lots of energy but tended to have low levels of motivation.  The ALJ further recognized that Plaintiff plays basketball with his friends, plays kickball, and plans on running track for the high school team.

Furthermore, in reaching his conclusion that Plaintiff was not disabled, the ALJ considered the opinions of the state agency physicians who reviewed Plaintiff's records.  Jesse Dees, Ph.D. concluded that Plaintiff had no severe impairments. (Tr. 229.)  Dr. Dees found that Plaintiff had a marked limitation in attending and completing tasks, but a less than marked limitation in acquiring and using information and no limitation in the other functional domains. (Tr. 231, 234.)

As discussed *supra*, Plaintiff's contention that the ALJ reached his conclusions without any expert opinion of a treating or examining physician controverting that of Dr. Passer is simply incorrect, as is Plaintiff's assertion that the ALJ's opinion is not supported by substantial evidence. Not only did the ALJ rely on the opinion of examining psychologist Dr. Lubin, but the ALJ also

considered the treatment notes of Dr. Passer and the observations of examining psychologist Dr. McCarthy.  Furthermore, the ALJ analyzed the opinions of the reviewing state agency physicians, as well as the testimony of Plaintiff, his mother, and statements from his teachers.

Plaintiff argues that since the ALJ chose not  to accord controlling weight to the opinion of his treating psychiatrist Dr. Passer, then she was obligated to detail more exhaustively her reasons for rejecting the opinion pursuant to *Newton v. Apfel*, 209 F.3d 448 (2000) (construing 20 C.F.R. §§ 404.1527(d) and 416.927(d)).  In *Newton*, the Fifth Circuit reversed an ALJ's decision rejecting the opinion of a treating physician without performing an analysis based on the six factors listed in 20 C.F.R. § 404.1527(d)(2).  However,  *Newton* is distinguishable.  In *Newton*, the ALJ "summarily rejected the opinions of Newton's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant." *Id.* at 458.  *Newton* did not involve "competing first-hand medical evidence," nor did it involve "the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.*  In the case *sub judice*, competing first-hand medical evidence was present that contradicted Dr. Passer's assessments.  That evidence, discussed in detail above, included Dr. Lubin's examination of Plaintiff, medical records indicating that Plaintiff's medication was effective, Dr. Passer's treatment notes, and Dr. McCarthy's observations.  The ALJ also considered both Plaintiff's and his mother's testimony about his everyday activities, as well as reports from Plaintiff's teachers.  Furthermore, this Court notes that the ALJ engaged in a detailed discussion of the evidence supporting and opposing Dr. Passer's opinion and the inconsistency of Dr. Passer's opinion with the record as a whole.  Therefore, this Court can find no error in not crediting Dr. Passer's opinions. *cf. Spellman v. Shalala*, 1 F.3d 357, 364-65 (5th Cir. 1993) (holding that it was proper to reject a treating physician's opinion that the claimant could not perform sedentary work, because the opinion was inconsistent with evidence of

the claimant's everyday activities and with medical records).

As the findings expounded *supra* diverge significantly from those of Dr. Passer's and Dr. McCarthy's opinions on Plaintiff's limitations, their opinions are not consistent with the evidence as a whole, including medical evidence, and good cause existed to not afford Dr. Passer's or Dr. McCarthy's opinions controlling weight.  Thus, the ALJ's obligation to perform a detailed analysis of Dr. Passer's or Dr. McCarthy's views, under the criteria set forth in 20 C.F.R. 404.1527(d), was not triggered because reliable medical evidence from an examining psychologist, which controverts the evidence of Dr. Passer and Dr. McCarthy, is reflected in the record. [2]  The determination of a disability is not a medical opinion entitled to deference, but a legal conclusion within the Commissioner's scope of authority. *Frank v. Barnhard*, 326 F.3d 618, 620 (5th Cir. 2003).

Lastly, Plaintiff argues that the ALJ applied the wrong legal standard because he failed to comply with the Appeals Council's remand order.  Plaintiff asserts that the Appeals Council instructed the ALJ to do a detailed analysis of Dr. Passer's opinion based on the criteria set out in 20 C.F.R. § 416.927.[3]  However, "[p]rocedural perfection in administrative proceedings is not required." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).  Procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).  Thus, to obtain remand because of an ALJ's failure to comply with an Appeals Council order, Plaintiff must

---

[2]Additionally, the Court notes that the ALJ did not explicitly and specifically reference the factors enumerated in 20 C.F.R. §§ 404.1527(d), 416.927(d) with reference to Dr. Passer's opinions. However, the ALJ did discuss some of the relevant factors in narrative form (i.e., the supportability of Passer's opinions in light of the relevant medical evidence and reasoning, the consistency of Passer's opinions with the remainder of the record, the duration of Passer's treatment of Plaintiff including the periods of non-treatment).

[3]As Plaintiff correctly notes, 20 C.F.R. 416.927(d) is the SSI concurrent of 20 C.F.R. 404.1527(d).

demonstrate that the ALJ's omission substantially affected the outcome.  As discussed and analyzed in detail above, according to *Newton* the ALJ was not obligated to conduct a detailed analysis of Dr. Passer's opinion under the criteria set forth in 20 C.F.R. §§ 404.1527(d), 416.927(d).  Furthermore, the Court finds that substantial evidence was present to support the findings of the ALJ.  Therefore, Plaintiff's argument is without merit.

The Court also notes that Plaintiff has not contested the ALJ's decision denying benefits based on Plaintiff's alleged physical limitations due to his Streeter's dysplasia.  However, out of an abundance of caution, the Court finds that the record does not contain any medical evidence supporting Plaintiff's alleged level of physical limitation.  Plaintiff underwent several surgical repairs in his infancy and early childhood to remove amniotic bands, however, there is no indication in the record, other than Plaintiff's mother's testimony that he loses balance and trips, that Plaintiff suffers from any physical limitation from the surgeries. (Tr. 182-92, 201-19.)  Indeed, Plaintiff's mother and the surgical doctor expressed that the surgeries were a success. *Id.*  Furthermore, Plaintiff testified that he often plays basketball with his friends and that he is planning on running track for the high school team again.  Also, one of Plaintiff's teachers observed that Plaintiff was able to participate in physical education and play with classmates on the playground, and that he had no physical problems that affected his ability to achieve in school.  Therefore, the Court finds that the ALJ's decision is supported by substantial evidence.

Because Dr. Passer's opinion was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and was "inconsistent with... other substantial evidence" in the record, the ALJ was not required to give his opinion controlling weight. *Martinez*, 64 F.3d at 176 (quotation omitted).  The ALJ applied the proper legal standard and his decision is supported by substantial evidence. *See Brown*, 192 F.3d at 496.

## RECOMMENDATION

The court has fully reviewed the entire record on this matter and finds that the Commissioner did not err as a matter of law in reaching the "final decision" in this matter and that the decision is supported by substantial evidence.  Accordingly, the Court recommends that the decision of the Commissioner is supported by substantial evidence and should be affirmed.  Thus, the Court recommends that Plaintiff's Motion [11-1] to Remand or Reverse be denied.

In accordance with the Rules of this Court, any party within fourteen days after being served a copy of this recommendation, may serve and file written objection to the recommendations, with a copy to the Judge, the U.S. Magistrate Judge and the opposing party.  The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions.  Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal- unobjected to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Services Automobile Association*, 79 F.3d 1425 (5th Cir. 1996).

THIS the   14th   day of October, 2010.

_s/ John M. Roper, Sr._
CHIEF UNITED STATES MAGISTRATE JUDGE